UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUSIANA

| | | |
|---|---|---|
| **Tanyake Cline** | * | CIVIL ACTION NO.  2:23-cv-6970 |
| | * | |
| **VERSUS** | * | |
| | * | |
| **VOLUNTEERS OF** | * | |
| **AMERICA SOUTHEAST LOUISIANA** | * | |

### COMPLAINT

Plaintiff, Tanyaka Cline ("Plaintiff"), by her attorney, Natalie Blackmon, for her complaint against Defendant, Volunteers of America Southeast Louisiana, ("Defendant"), states as follows:

### NATURE OF ACTION

1.

Plaintiff brings this action for race discrimination and retaliation under the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., as amended by the Civil Rights Act of 1991 ("Title VII") and Section 1981 of the Civil Rights Act of 1981.

### JURISIDICTION AND VENUE

2.

Jurisdiction of the Court is invoked pursuant to 28 U.S.C. Sections 1331, 1343, and Title VII. The unlawful discriminatory and retaliatory acts alleged herein were committed in New Orleans, Louisiana, within the Eastern District of Louisiana.

3.

Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(a).

## PARTIES

4.

Plaintiff in her capacity as an individual, is a citizen of the United States of America. Defendant is an entity registered to do business in Louisiana.

## FACTUAL ALLEGATIONS

5.

Plaintiff is a loyal and hard-working African American woman who has diligently worked for Defendant for 9 years.

6.

In 2018, Plaintiff was promoted to Assistant Program Director. Jeanne Leverne, Caucasian, was the other Assistant Program Director.

7.

Both Plaintiff and Jeanne reported to Melissa Haley, Vice President of Programs Operations.

8.

Although Plaintiff and Jeanne held the same job title, the terms and conditions of their employment were different.

9.

Around April 2021, Plaintiff met Melissa. Plaintiff received two job descriptions to review, Administrative Assistant and Office Manager. Both positions were essentially demotions.

10.

Plaintiff was instructed by Melissa these were her new job duties. In addition to that, Melissa instructed Plaintiff to work on the Northshore at least once a week, meaning Plaintiff had to work directly with clients and report to Jeanne, the other Assistant Program Director.

11.

Plaintiff never received anything from Human Resources changing her job title or job duties or demoting her. Plaintiff's position was never officially changed by Human Resources. In fact, when Plaintiff questioned Human Resources about the change, they knew nothing about it.

12.

There were no issues with Plaintiff's performance, nor were there any disciplinary actions that would have caused this change. In addition, Jeanne was not required to do the same, although they held the same job title.

13.

Aside from the change in job duties and the requirement to work under Jeanne once a week, Plaintiff was also treated differently than Jeanne in the way she was spoken to and the manner incidents were handled.

14.

Plaintiff was yelled at and belittled by Melissa constantly, sometimes in front of her coworkers. In contrast, Melissa would yell at Plaintiff when Jeanne made an error and instead of Melissa correcting Jeanne herself, she would ask Plaintiff to contact Jeanne.

15.

For example, Plaintiff received a text message from Melissa requesting Plaintiff contact Jeanne because the HUD report was not completed. Melissa then called Plaintiff and yelled about Jeanne not completing the report. Plaintiff requested Melissa to calm down and not to project her anger for Jeanne onto her.

16.

This is one of many examples of how different instances were handled between Plaintiff and Jeanne.

17.

Around November 8, 2021, Plaintiff contacted Todd, Executive VP (Melissa's supervisor) hoping for some resolution. She detailed the rude, harassing behavior and further informed him this behavior did not extend to Jeanne.

18.

Plaintiff believes the differential treatment was based on her race, African American

19.

This ongoing differential treatment between Plaintiff and Jeanne from Melissa lasted from 2021 to present.

20.

December 12, 2022, Plaintiff inquired about a spoke with Melissa about an upcoming opening in the Medical Respite. There would be a pay increase to 65k.

21.

Plaintiff was never placed into the position nor was she given a pay increase; however, she was forced to do the job duties of this position whereas, Jeanne was not.

22.

About a month after inquiring about the Medical Respite position, on January 23, 2023, Plaintiff was assigned to pick-up a client for Medical Respite. Plaintiff inquired to Melissa about why she was now also doing respite care duties without the job title or the salary increase. She also mentioned that Jeanne was not assigned these types of duties.

23.

Melissa became enraged and yelled at Plaintiff she would get the client herself.

24.

Two days after speaking out about the differential treatment between herself and Jeanne to Melissa, on January 25, 2023, Melissa reached out Elaine Lane requesting feedback on Plaintiff's daily tasks as she felt Plaintiff was not completing her job duties.

25.

Five days later, on January 30, 2023, Plaintiff spoke with Jason Burt, the new Executive VP- Melissa's supervisor. Plaintiff explained the differential treatment between her and Jeanne, specifically how although she held the same job title as Jeanne, she was given two different job duties that were demotions, at one point made to work under Jeanne once a week, and now was receiving Respite Care duties although Melissa had not given her the position or pay increase. Plaintiff further detailed how after she spoke to Melissa bout this, Melissa made unwarranted inquiries to Elaine about Plaintiff's work performance.

26.

Jason stated the situation would be addressed. Plaintiff then received an email from Sierra Spears requesting a meeting at 2:30 pm for 1:2:1 supervision. Plaintiff requested Jason Burt to be present; however, he was not. Other than Melissa, only Sierra Spears Sierra, Administrative Assistant to the Vice Presidents, was there to take notes.

27.

The meeting ended with no resolution.

28.

Three days later, February 2, 2023, after again speaking out to Melissa regarding the differential treatment of herself and Jeanne, Plaintiff received a call from Sierra asking to meet Melissa for a 4:30 meeting. At that time, Jason Burt and Melissa Haley were present. Melissa then issued Plaintiff a corrective action for her tone during the meeting three days before.

29.

This corrective action came as a shock to Plaintiff because she had just discussed her treatment with Jason and had additionally requested his presence during the meeting.

30.

Plaintiff informed Jason that Melissa was being vindictive because she had called her out about the differential treatment between herself and Jeanne. His response was "I have known Melissa for 16 years and she is not vindictive".

31.

About two months after this incident on April 27, 2023, Melissa asked Plaintiff to interview Giovanni Baptist for the Medical Respite position – the position Plaintiff had inquired about for herself.

32.

On May 16, 2023, an email was received from Giovanni, declining the Medical Respite position.

33.

On May 18, 2023, Plaintiff met with Melissa regarding Medical Respite. Plaintiff was given a directive to contact Giovanni to see why she refused the job offer. Melissa stated that Jason wanted to know why Giovanni would refuse to make an extra 10k being a single mother with three kids.

34.

On May 22, 2023, Plaintiff received a telephone call from Melissa Haley, asking Giovanni going to be hired for the position. Melissa became irate and started yelling on the phone, "If you (Plaintiff) don't hire GIO (Giovanni) you will be working out of the SRO".

35.

SRO is the single room occupancy housed in the Respite Program. Plaintiff states the SRO is HUD (Housing for Urban Development) program for housing individuals with substance abuse issues, sex offenders, substance and homeless people. The facility is unkept, with a high volume of drug activity in the building.

36.

During this call, Plaintiff expressed that she felt she was being bullied and harassed to hire someone that refused a job. She also questioned why Jeanne wasn't given this directive. In addition, Plaintiff inquired as to why she could not get the position.

37.

The next day, on May 23, 2023, a Medical Respite client went missing while the nurse was on duty. Plaintiff was scheduled to attend training at UNO. Melissa called stating Plaintiff was responsible for the client and that Plaintiff had to leave training to go look for the client.

38.

Plaintiff was made to miss training to work Medical Respite job duties although she was not given this position and she was not responsible for the client.

39.

Jeanne was not given this duty although she was present in the office on that day.

40.

Again, Plaintiff spoke out about how different her role as Assistant Program Director was from Jeanne's. Specifically, Plaintiff's job duties now extended to medical respite, although she was not officially given the position or given a salary increase.

41.

A month later, around June 23, 2023, Plaintiff was moved to SRO without explanation.

42.

Within Plaintiff's first week in SRO, two people were murdered outside the building.

43.

A little over a month later, on July 25, 2023, Plaintiff met with Melissa for a face-to-face evaluation. Plaintiff was informed that she needed improvement with work performance.

44.

Plaintiff had never received a corrective action or any feedback regarding her work performance prior to this evaluation.

45.

This retaliatory behavior against Plaintiff continued with Melissa investigating Plaintiff's role in another coworker's attendance of a work training on August 15, 2023, in addition to a probe on August 16, 2023 into an absence that had been approved by melissa weeks earlier.

46.

On August 16, 2023, due to the continued, unwarranted harassment, differential treatment based on race, as well as unexplained transfer to SRO, Plaintiff resigned.

## PUNTITIVE DAMAGES

47.

Defendant acted and/or failed to act without malice or willfulness or reckless indifference to Plaintiff's rights. The conduct alleged herein was willful and wanton and justifies an award of punitive damages. Although Plaintiff and Jeanne held the same job title, the terms and conditions of their employment were different as delegated by Plaintiff's supervisor Mellissa Haley.

48.

Plaintiff pointed this differential treatment out numerous times to senior executives to no avail. In addition, each time Plaintiff spoke out about her mistreatment, she was faced with retaliation in the form of Melissa opening investigations on her, receiving corrective actions, given job duties that were not hers, not receiving warranted salary increase, and being forced out of her position to work in SRO.

## RETALIATION IN VIOLATION OF TITLE VII

49.

Plaintiff re-alleges paragraphs 1 through 16 and incorporates them herein by reference.

50.

Title VII, specifically 42 U.S.C. Section 2000e-3, makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice.

51.

By its conduct, Defendant subjected Plaintiff to unlawful retaliation in violation of Title VII by punishing Plaintiff each time she spoke out about differential treatment of her and Jeanne based on race.

52.

Each time Plaintiff spoke out about her mistreatment, she was faced with retaliation in the form of Melissa opening investigations on her, receiving corrective actions, given job duties that were not hers, not receiving warranted salary increase, and being forced out of her position to work in SRO.

## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

53.

Title VII of the Civil Rights Act of 1964 prohibits covered employers from discriminating based on race, color, sex, religion, and national origin. Title VII's prohibition against discrimination includes claims of race, gender, and national origin.

54.

Here, Plaintiff faced differential treatment in the terms and conditions of her employment as compared to her Caucasian coworker, Jeanne. Specifically, although Plaintiff and Jeanne held the same job title, the terms and conditions of their employment were different as delegated by Plaintiff's supervisor Mellissa Haley.

55.

While Jeanne maintained the job duties of an Assistant Program Director, Plaintiff's job duties were changed to that of Administrative Assistant and Office Manager, essentially demotions. In addition, Melissa instructed Plaintiff to work on the Northshore at least once a week, meaning Plaintiff had to work directly with clients and report to Jeanne, the other Assistant Program Director at least once a week.

56.

Further, Plaintiff was then forced to handle Medical Respite Care job duties although she was never given that job title or salary increase and eventually moved to SRO without explanation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court find in her favor against the Defendant for the following relief:

a. Declare that the acts and conduct of Defendant violates Title VII, and the anti-retaliation provisions of those laws;

b. Award Plaintiff the value of all future compensation and future benefits he will lose as a result of Defendant's unlawful conduct;

c. In the alternative to paragraph (d), reinstate Plaintiff with appropriate promotions and/or reinstatement and otherwise make Plaintiff whole;

d. Award Plaintiff damages for emotional distress, humiliation, mental anguish, loss of enjoyment of life, and inconvenience;

e. Award Plaintiff compensatory damages;

f. Award Plaintiff punitive damages;

g. Award Plaintiff prejudgment interest;

    h.   Award Plaintiff reasonable attorneys' fees, cost and disbursements; and

    i.   Award Plaintiff such other relief deemed just and proper by this Court.

Respectfully submitted,


_/s/ Natalie Blackman_
Natalie Blackman #35662
8550 United Plaza Blvd. Suite 702
Baton Rouge, LA 70809
Phone: (318) 639-4529
Fax: (888) 463-4952


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record via electronic filing, on this 20th day of November 2023.